1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   IDALIA PACHECO,

11         Plaintiff,                    No. 2:10-cv-01733 KJN

12         v.

13   MICHAEL J. ASTRUE,
     Commissioner of Social Security,

14

15         Defendant.                    ORDER
     _____/

16         Plaintiff, who is represented by counsel, seeks judicial review of a final decision

17   of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for

18   Disability Insurance Benefits under Title II of the Social Security Act ("Act") and Supplemental

19   Security Income benefits under Title XVI of the Act.[1]  In her motion for summary judgment,

20   plaintiff contends that the administrative law judge ("ALJ") in this case erred by failing to:

21   (1) find that plaintiff's depression was a severe impairment; (2) properly assess the impact of

22   plaintiff's obesity; and (3) properly evaluate and credit the lay testimony of plaintiff's daughter

23   regarding plaintiff's pain and functional limitations.  (See generally Pl.'s Mot. For Summ. J. and

24   Memo. In Supp. Of Mot. ("Pl. Memo.") at 1, Dkt. No. 19.)  Plaintiff asks the court to remand this

25

26         [1]  This case was referred to the undersigned pursuant to Eastern District of California
     Local Rule 302(c)(15) and 28 U.S.C. § 636(c), and both parties voluntarily consented to proceed
     before a United States Magistrate Judge, 28 U.S.C. § 636(c)(1); Fed. R. Civ. P. 73; E. Dist. Local
     Rule 301.  (Dkt. Nos. 6, 10.)

1  matter to the agency so that these alleged errors may be addressed.  The Commissioner filed an

2  opposition to plaintiff's motion and a cross-motion for summary judgment.  (Dkt. No. 20.)

3  Plaintiff did not file a reply brief.  For the reasons stated below, the court denies plaintiff's

4  motion for summary judgment and grants the Commissioner's cross-motion for summary

5  judgment.

6  I.    BACKGROUND[2]

7        A.    Procedural History

8              On September 10, 2006, plaintiff protectively filed concurrent applications for

9  Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits that

10  alleged a disability onset date of July 15, 2005.  (Admin. Tr. ("AT") 78-80, 85.)  The Social

11  Security Administration denied plaintiff's application initially and upon reconsideration.  (AT 30,

12  31, 35, 36.)  The ALJ conducted a hearing regarding plaintiff's claim on November 19, 2007.

13  (AT 13-29.)  Plaintiff was represented by counsel at the hearing and testified with the assistance

14  of an interpreter.  A vocational expert ("VE") also testified at the hearing.

15              In a written decision dated June 24, 2008, the ALJ denied plaintiff's application

16  for benefits based on a finding that plaintiff could perform other work in the representative

17  occupations of "small parts assembler" and "fast food worker," which are jobs that exist in

18  significant numbers in the California economy.[3]  (AT 37-48.)  The ALJ's decision became the

---

19    [2]  Because the parties are familiar with the factual background of this case, including
20  plaintiff's medical history, the undersigned does not exhaustively relate those facts here.  The
    facts related to plaintiff's impairments and medical history will be addressed insofar as they are
21  relevant to the issues presented by the parties' respective motions.

22    [3]  Disability Insurance Benefits are paid to disabled persons who have contributed to the
    Social Security program, 42 U.S.C. §§ 401 et seq.  Generally speaking, Supplemental Security
23  Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382 et seq.  Under both
    benefit schemes, the term "disability" is defined, in part, as an "inability to engage in any
24  substantial gainful activity" due to "any medically determinable physical or mental impairment
    which can be expected to result in death or which has lasted or can be expected to last for a
25  continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).
    A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 404.1520,
26  404.1571-1576, 416.920, 416.971-976; see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).
    The Ninth Circuit Court of Appeals has summarized the sequential evaluation as follows:

final decision of the Commissioner when the Appeals Council denied plaintiff request for review. (AT 1-5.)  Plaintiff subsequently filed this action.

   B. <u>Summary of the ALJ's Findings</u>

    The ALJ conducted the required five-step evaluation and concluded that plaintiff was not disabled within the meaning of the Act.  At step one, the ALJ found that plaintiff had not engaged in substantial gainful employment since July 15, 2005, the onset date of plaintiff's alleged disability.  (AT 42.)  At step two, the ALJ concluded that plaintiff had the following "severe" impairments: "status post back injury (lumbar sprain/strain with radiculopathy versus annular tears) exacerbated by obesity; and, history of bunion surgery."  (<u>Id</u>.)  Central to plaintiff's first assignment of error, the ALJ also concluded that plaintiff suffered the "medically determinable, *but not severe*, impairment:  depression" (emphasis added).  (AT 43.)  The ALJ's finding that plaintiff's depression was not severe cited:  (1) a consultative psychiatric

     Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

     Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

     Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.

     Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

     Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

<u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

  The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  <u>Bowen</u>, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  <u>Id</u>.

1  examination that concluded plaintiff's depression would improve within 3-6 months with

2  treatment and that plaintiff "had the ability to perform work activities on a sustained basis"; and

3  (2) the state agency reviewing medical consultant's agreement that plaintiff's mental impairment

4  was not severe.  (AT 43.)  At step three, the ALJ determined that plaintiff did not have an

5  impairment or combination of impairments that met or medically equaled one of the impairments

6  listed in the applicable regulations.  (Id.)

7          Prior to reaching step four of the analysis, the ALJ determined plaintiff's residual

8  functional capacity ("RFC") as follows:

9          [T]he claimant has the residual functional capacity to lift/carry 20 pounds
           occasionally and 10 pounds frequently; stand/walk 6 hours/8 hour
10         workday; sit 6 hours/8 hour workday; frequently climb ramps or stairs;
           frequently balance kneel, or crawl; occasionally climb
11         ladders/ropes/scaffolds; and, occasionally stoop or crouch.

12  (AT 43.)  Central to plaintiff's second assignment of error, the ALJ's formulation of plaintiff's

13  RFC did not expressly discuss the impact plaintiff's obesity might have on her ability to function

14  in a sustained manner.  (See AT 43-44.)  In assessing plaintiff's RFC, the ALJ addressed

15  plaintiff's testimony and found that plaintiff was not credible to the extent that her testimony

16  conflicted with the RFC.  (AT 44.)  Plaintiff has not challenged that finding.  Central to

17  plaintiff's third assignment of error, the ALJ addressed the lay testimony of plaintiff's daughter,

18  Veronica Pacheco, regarding plaintiff's physical and mental impairments, and gave "greater

19  weight to the documented medical evidence of record."  (AT 44.)

20          Having assessed plaintiff's RFC, the ALJ found at step four that plaintiff was

21  "unable to perform any past relevant work" as a Certified Nursing Aide.  (AT 46.)  At step five,

22  the ALJ concluded that considering plaintiff's age, education, work experience, the RFC, and the

23  VE's testimony, plaintiff was not disabled within the meaning of the Act.  (AT 47.)  Relying on

24  the VE's testimony, the ALJ determined that plaintiff could perform work in the representative

25  occupations of "small parts assembler" and "fast food worker" and that jobs in those occupations

26  existed in significant numbers in the California economy.  (Id.)

1   II.      STANDARDS OF REVIEW

2           The court reviews the Commissioner's decision to determine whether it is (1) free

3   of legal error, and (2) supported by substantial evidence in the record as a whole.  Bruce v.

4   Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009).  This standard of review has been described as

5   "highly deferential."  Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir.

6   2009).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it

7   is such relevant evidence as a reasonable mind might accept as adequate to support a

8   conclusion."  Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009)

9   (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)); accord Valentine, 574 F.3d at

10   690.  "The ALJ is responsible for determining credibility, resolving conflicts in medical

11   testimony, and for resolving ambiguities."  Andrews, 53 F.3d at 1039; see also Tommasetti v.

12   Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to

13   resolving ambiguities in the medical evidence.").  Findings of fact that are supported by

14   substantial evidence are conclusive.  42 U.S.C. § 405(g); see also McCarthy v. Apfel, 221 F.3d

15   1119, 1125 (9th Cir. 2000).  "Where the evidence as a whole can support either a grant or a

16   denial, [the court] may not substitute [its] judgment for the ALJ's."  Bray, 554 F.3d at 1222; see

17   also Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("'Where evidence is

18   susceptible to more than one rational interpretation,' the ALJ's decision should be upheld.")

19   (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).  However, the court "must

20   consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum

21   of supporting evidence.'"  Ryan, 528 F.3d at 1198 (quoting Robbins v. Soc. Sec. Admin., 466

22   F.3d 880, 882 (9th Cir. 2006)); accord Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir.

23   2007).

24   III.     DISCUSSION

25          A.      Depression

26                  Plaintiff first challenges the ALJ's determination at step two that her depression

5

was not a "severe impairment." (Pl. Memo. at 18-21.)  In finding that plaintiff's depression was

not severe, the ALJ relied on the consultative psychiatric examination performed in November

2006 by Dr. Stefan Lampe and the state agency medical consultant's psychiatric review, also

conducted in November 2006. (AT 43.)  Dr. Lampe's examination found that while plaintiff's

"[m]ood was dysthymic" and her "[a]ffect was restricted with some tearfulness," plaintiff did not

suffer from psychosis and her insight and judgment were "fair." (AT 527.)  Dr. Lampe found

that plaintiff suffered "Major depressive disorder, single episode, moderate" and that "[f]rom a

psychiatric standpoint, this claimant's prognosis is poor without treatment.  With appropriate

treatment she should be better in three to six months." (Id.)  As to any limitations plaintiff's

depression might place on her ability to function, Dr. Lampe found:

> She can understand, remember and carry out simple as well as
> more technical instructions.  She would not have difficulty dealing
> with the public.  She would not have difficulty maintaining con-
> centration and attention for two-hour increments.  On a purely psy-
> chiatric basis and not considering anything physical she should be
> able to withstand stress and pressures associated with an eight-hour
> workday on an ongoing basis.

(AT 528.)

The state agency reviewing medical consultant agreed that plaintiff's mental

impairment was not severe. (AT 529.)  Dr. Lampe's report is the only psychiatric examination of

plaintiff in the record.  However, the record shows that from 2003 through 2007, plaintiff did

complain of depression to her physicians and she received prescriptions for Amitriptyline, an

antidepressant. (See AT 263, 446, 505, 576.)  Plaintiff testified that she was depressed and

reported difficulty concentrating. (AT 25-26.)  Plaintiff's daughter testified that her mother was

forgetful, had problems getting along with people, and did not handle stress well. (AT 102-06.)

Plaintiff bears the burden of proving that she is disabled.  Meanel v. Apfel, 172

F.3d 1111, 1114 (9th Cir. 1999); 20 C.F.R. § 404.1512.  A person is disabled if her impairments

are severe and meet the durational requirement of twelve months.  20 C.F.R. §§ 404.1505,

404,1520(a).  A severe impairment is one that significantly limits the physical or mental ability to

1     perform basic work activities.  20 C.F.R. § 404.1520(c).  Examples of basic work activities

2     include carrying out simple instructions, responding appropriately to usual work situations,

3     dealing with changes in a routine work setting, and performing ordinary physical functions like

4     walking and sitting.  20 C.F.R. § 404.1521(b).

5             "An impairment . . . may be found not severe only if the evidence establishes a

6     slight abnormality that has no more than a minimal effect on an individual's ability to work."

7     <u>Webb v. Barnhart</u>, 433 F.3d 683, 686 (9th Cir. 2005) (internal quotation omitted).  The

8     Commissioner has stated that "[i]f an adjudicator is unable to determine clearly the effect of an

9     impairment or combination of impairments on the individual's ability to do basic work activities,

10     the sequential evaluation should not end with the not severe evaluation step."  <u>Id.</u>; SSR 85–28.

11     Step two, then, is "a de minimis screening device [used] to dispose of groundless claims,"

12     <u>Smolen v. Chater</u>, 80 F.3d 1273, 1290 (9th Cir. 1996), and an ALJ may find that a claimant lacks

13     a medically severe impairment or combination of impairments only when his conclusion is

14     "clearly established by medical evidence."  SSR 85–28.

15             Plaintiff contends that the ALJ's failure to consider her depression "severe" at

16     step two resulted in the ALJ improperly "discount[ing] Ms. Pacheco's psychologically based

17     work-related limitations when assessing her residual functional capacity, including her impaired

18     concentration, stress, and impaired ability to get along with people."  (Pl. Memo. at 20.)  This

19     assertion is incorrect.  When formulating plaintiff's RFC at step four, the ALJ specifically

20     considered and weighed the credibility of plaintiff's and her daughter's testimony regarding

21     plaintiff's alleged limitations due to her depression against the objective medical evidence.

22     (AT 44.)  The ALJ noted at step four that plaintiff had claimed that "her medications do not help

23     her depression and she has problems with concentration" and that plaintiff's daughter reported

24     her mother was limited in her ability to "complete tasks, get along with others, . . . or

25     concentrate."  (AT 44.)  The ALJ, however, found that the plaintiff's "statements concerning the

26     intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they

1  are inconsistent with the [RFC] assessment" on the ground "[t]here is evidence in the record

2  indicating that claimant has exaggerated her complaints" and "claimant's credibility has been

3  damaged by her allegation that she has to use a cane to walk and then was seen on sub rosa film

4  to function just fine without a cane." (AT 44-45.) As to the daughter's testimony, the ALJ gave

5  "greater weight to the documented medical evidence of record." (AT 44.) Crediting the

6  objective medical evidence over plaintiff's and her daughter's subjective reports, which is within

7  the ALJ's authority, Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005), plaintiff did not

8  have any psychologically based work-related limitations for the ALJ to factor into her RFC.

9          Plaintiff contends that the ALJ failed the severity test set up in Webb by not

10  finding her depression a severe impairment at step two. Webb, however, involved a sequential

11  evaluation that *ended* at step two after a finding that the claimant did not have *any* severe

12  impairments. In such cases, the step two severity finding becomes more significant because it

13  terminates the analysis and prevents any further discussion of the impact of plaintiff's

14  impairments. Here, however, plaintiff prevailed at step two based on her back injury and bunion

15  surgery. (AT 42.) Once a plaintiff prevails at step two, regardless of which condition is found to

16  be severe, the Commissioner proceeds with the sequential evaluation, considering at each step all

17  other alleged impairments and symptoms that may impact her ability to work. 42 U.S.C.

18  § 423(d)(2)(B). Even after finding plaintiff's depression to be non-severe, the ALJ analyzed the

19  impairments alleged effects on plaintiff's RFC at a subsequent step. 20 C.F.R. § 404.1545(a)(2);

20  see also Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007). (AT 43-46.) Therefore, the Court

21  finds that, even if the ALJ committed error at step two by not concluding that plaintiff's

22  depression was severe, it was harmless and does not necessitate remand.

23          B.      Obesity

24          Next, plaintiff argues that even though the ALJ found her obesity to be a

25  component of her severe physical impairment at step two, "the ALJ failed to discuss the impact

26  of her weight on her [RFC]." (Pl. Memo. at 21-22.) Plaintiff is correct that obesity must be

1    considered throughout the sequential evaluation process, including when determining an

2    individual's RFC.  SSR 02–1p.  "The combined effects of obesity with other impairments may be

3    greater than might be expected without obesity."  SSR 02–1p.  The Ninth Circuit has held that,

4    pursuant to SSR 02–1p, the ALJ must consider obesity in determining RFC based on the

5    information in the case record.  Burch, 400 F.3d at 683.

6            In determining plaintiff's RFC, the ALJ thoroughly discussed the record medical

7    evidence of plaintiff's functional limitations.  (AT 44-46.)  Plaintiff's obesity was noted in the

8    record.  She was often encouraged to lose weight and one doctor recommended against surgery

9    for her back condition specifically due to plaintiff's "body habitus."  (AT 446.)  Plaintiff points

10   to no instances, however, where her obesity caused any functional limitations apart from those

11   already considered by the ALJ.  Accordingly, the ALJ properly analyzed plaintiff's impairments

12   at step two and throughout the evaluation.  The analysis was supported by substantial evidence

13   and was free of legal error.

14           C.    Opinion Testimony

15           Lastly, plaintiff asserts that the ALJ "failed to adequately discuss and credit the

16   third party statements of her adult daughter, Veronica Pacheco."  (Pl. Memo. 22.)  "An ALJ need

17   only give germane reasons for discrediting the testimony of lay witnesses.  Inconsistency with

18   medical evidence is one such reason."  Bayliss, 427 F.3d at 1218 (internal citation omitted).

19   Here, to the extent that Vanessa Pacheco's testimony was inconsistent with the medical record,

20   the ALJ gave "greater weight to the documented medical evidence of record."  (AT 44.)

21   Accordingly, the ALJ's rejection of Vanessa Pacheco's testimony is supported by substantial

22   evidence and was not error.

23   IV.    CONCLUSION

24           For the foregoing reasons, IT IS HEREBY ORDERED that:

25           1.    Plaintiff's motion for summary judgment (Dkt. No. 19) is denied.

26           2.    The Commissioner's cross-motion for summary judgment (Dkt. No. 20) is

granted.

        3.      The Clerk of Court is directed to enter judgment in favor of the Commissioner.

        IT IS SO ORDERED.

DATED:  June 6, 2012

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE